UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
WILLIAM GONZALEZ,                              :
:
                Petitioner,        :
:   07 Civ. 3571 (GEL)
        -v.-                                    :   02 Cr. 877 (GEL)
:
UNITED STATES OF AMERICA,                      :   **OPINION AND ORDER**
:
                Respondent.        :
:
------------------------------------------------------------x

GERARD E. LYNCH, District Judge:

      On May 5, 2005, this Court sentenced William Gonzalez to 120 months in prison on his plea of guilty to charges of conspiring to import narcotics into the United States. He now moves pursuant to 28 U.S.C. § 2255 to vacate his sentence, arguing (1) that the Court "failed to advise [him of] his right to jury-trial determinations on drug amount beyond a reasonable doubt before application of a mandatory minimum sentence," (2) that his attorney was ineffective by "failing to object" to the Court's failure so to advise him, and (3) that trial counsel was ineffective by "failing to object/dispute drug amount responsibility . . . and/or [dispute whether defendant was] reasonably capable of providing" the alleged quantities of narcotics. (Pet. ¶ 12, A-C.)

      The motion will be summarily dismissed pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts, because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Cephas v. Nash, 328 F.3d 98, 103 (2d Cir. 2003) (noting propriety of such dismissals).

I.      **Adequacy of Guilty Plea Allocution**

The transcript of Gonzalez's guilty plea allocution conclusively refutes his first claim. The Court explicitly advised defendant that he had a right to plead not guilty to the charges against him, and that if he did plead not guilty, he would be entitled "to a speedy and public trial by jury on those charges," at which the government would be required to prove guilt beyond a reasonable doubt to the unanimous satisfaction of the jury. (9/14/04 Tr. 8.)

The Court then informed Gonzalez of the charges against him. After describing the charges in a general way, the Court proceeded to inform him about "the elements of those offenses. That means that *these are the things the government would have to prove beyond a reasonable doubt if you went to trial*." (Id. 10-11, emphasis added.) After defining the nature of conspiracy, the objects of the charged conspiracy, and the requirement of knowing and intentional membership, the Court went on to note that "the government would have to prove," with respect to Count One, "that the purpose of the criminal conspiracy was to import . . . one kilogram or more of heroin and five kilograms or more of cocaine," with respect to Count Two, "that the object of the agreement was to distribute within the United States one kilogram or more of heroin and five kilograms or more of cocaine," and with respect to Count Three, "that the purpose of the agreement was to distribute within the United States some quantity of the drug known as MDMA or Ecstasy." (Id. 11.) Gonzalez stated that he understood the Court's explanation. (Id. 12.)

The Court further advised defendant of the mandatory minimum terms that applied: "the mandatory minimum term of imprisonment on Counts One and Two is 10 years and there is a mandatory minimum term of supervised release of five years on those two counts. On Count

Three . . . there is a mandatory minimum supervised release term of three years." (Id. 14.) The Court explained that, where mandatory minimum sentences existed, "even if I wanted to, I would not be allowed to sentence you to less than the minimum." (Id.) Defendant stated that he understood the mandatory minimum punishments in his case. (Id.)

Thus, the Court straightforwardly advised Gonzalez that the mandatory minimum sentences applied only if he was convicted of the offenses charged, that the offenses charged required as an element particular quantities and types of narcotics, and that the defendant was entitled to a jury trial at which all elements would have to be proved beyond a reasonable doubt to the satisfaction of the jury. Accordingly, the record "conclusively show[s] that the prisoner is entitled to no relief" on the first ground of his petition, 28 U.S.C. § 2255.

## II.     Ineffective Assistance of Counsel at Guilty Plea

Since the defendant was fully advised, there was nothing for defense counsel to object to, and petitioner's second ground is therefore equally without merit.

## III.     Ineffective Assistance of Counsel at Sentencing

Gonzalez's third ground is that he received ineffective assistance from his attorney at sentencing, because counsel "failed to object/dispute drug amount responsibility and the application of the mandatory minimum of 10 years under US v. Martinez and/or not reasonably capable of providing under USSG § 2D1.1(12)." (Pet. ¶ 12C.) Although the argument is not entirely clear, Gonzalez seems to raise two contentions.

First, the reference to "US v. Martinez" appears to invoke United States v. Martinez, 987 F.2d 920 (2d Cir. 1993), in which the Second Circuit held that, when "an individual is charged with a wide-ranging conspiracy in which he only played a small part," id. at 924, the mandatory

3

minimum sentences under 21 U.S.C. § 841(b)(1)(A) only applies to the extent the Court finds by a preponderance of the evidence that he "knew or reasonably should have known" about that quantum of narcotics.  Id. at 926.  Second, the reference to "USSG § 2D1.1(12)" appears to invoke Application Note 12 to U.S.S.G. § 2D1.1, which provides that, where an offense involves agreement to sell a controlled substance, "the agreed-upon quantity of the controlled substance shall be used to determine the offense level" (with exceptions not pertinent here) unless "the defendant establishes that [he] . . . was not reasonably capable of providing . . . the agreed-upon quantity of the controlled substance."

Since, on the facts before the Court at the time of sentencing, neither of these rules could have benefitted Gonzalez, counsel's failure to raise these particular arguments was not ineffective assistance.

This is not a case of a dry conspiracy or one in which a defendant is convicted simply on the basis of promises to an informant or undercover agent that might amount to mere puffery. Gonzalez's brother, Alberto Gonzalez, the primary figure in the conspiracy charged in the indictment, ran a substantial narcotics distribution enterprise in the United States, resulting in his conviction and sentence to seven years to life in the New York State prisons.  The present indictment, which resulted in guilty pleas not only by William Gonzalez but also by Alberto and his son Steven Gonzalez, charged that Alberto conspired with the assistance of Steven to continue the operation of his narcotics enterprise while in prison.  This conspiracy was demonstrated through numerous recorded conversations.

During the course of this conspiracy, Alberto sought the assistance of his brother William, who resided in Colombia, to develop new sources of supply.  As William confessed

4

while pleading guilty,

> I had a conversation with my brother, Alberto Gonzalez, and he asked me to find people who would provide heroin and cocaine with money that the informant [a government informant who had infiltrated the conspiracy] was going to give me. And then the drugs would be given to a third person to be transported to the United States. And I agreed to do this. I also knew that the drugs would be distributed in New York. I didn't know the exact amount. But it was agreed that it would be at least one kilogram of heroin and at least five kilograms of cocaine.

(9/14/04 Tr. 18.)

This admission alone defeats any possible application of the rule of Martinez to the facts of this case. Although Gonzalez was, so far as he admitted at his plea, a late-comer to his brother's on-going narcotics enterprise, he was not held accountable for any of Alberto's prior dealings, or for any other activities on the part of Alberto of which he was unaware, foreseeable or otherwise. Rather, Gonzalez specifically admitted that he personally agreed to secure on Alberto's behalf quantities of drugs in whatever amount the money to be sent through the informant would buy, but in any event in excess of the quantities required to trigger the ten-year statutory minimum sentence eventually imposed. Since Gonzalez admitted his personal agreement to aid in obtaining the statutory quantities of drugs, his sentence is fully consistent with the Martinez rule.

Gonzalez's second argument is no more helpful. First, Application Note 12 comments on the proper calculation of drug quantity for purposes of the sentencing guidelines. But the sentencing guidelines ultimately played no role in Gonzalez's sentence, which was dictated by the statutory minimum required by 21 U.S.C. § 841(b)(1)(A). There was thus no reason for defense counsel to invoke the Note, which could have had no effect on the sentence imposed.

Second, on the facts of this case, the principle behind Application Note 12 – to the extent it has any relevance by analogy to the applicability of the statutory mandatory minimum – would provide no benefit to Gonzalez.  Where a defendant agrees to provide an informant or undercover officer with large quantities of drugs, but eventually fails to do so, the quantity discussed with the informant may not be a realistic reflection of the extent of the defendant's culpability.  Since the guidelines are driven by drug quantity, it would be unfair for a small-time defendant to be sentenced as a major drug dealer where he had exaggerated his actual capacity merely to impress a potential customer.

That was emphatically not the situation here.  There was no question that Alberto Gonzalez was indeed dealing in large quantities of heroin, cocaine and other drugs.  The indictment in this case resulted in his sentence to 235 months in prison, as well as in the convictions of a half-dozen of his suppliers, customers and operatives, including his son Steven.  The Court had before it at the time of sentencing a DEA report of William Gonzalez's "safety-valve" proffer session, in which he admitted that he had been advised that the intermediary had $500,000 with which to purchase drugs.  Gonzalez further admitted that he knew "vendors" from whom he could buy the drugs, but that he had not acquired any drugs because the intermediary never came up with the cash.  He detailed specific sources from which he expected to acquire multiple kilograms of heroin and cocaine.  (See Letter of AUSA Marc A. Racanelli to the Court, dated Apr. 25, 2005, Ex. A.)  Moreover, Gonzalez was recorded discussing heroin and cocaine transactions with brother Alberto, during which he represented that he could obtain whatever quantities of drugs Alberto wanted, referred to other members of Alberto's organization, and demonstrated that he was familiar with the logistics of complicated drug-importing schemes.

(Id. at 2-5 & Exs. B, C, E.)  The Government also presented evidence of statements made during the course of the conspiracy by Alberto and Steven concerning William Gonzalez's role in importing drugs from Colombia.  (Id. at 5-6 & Exs. B, C, D, E.)

All of this evidence was before the Court because defense counsel vigorously disputed Gonzalez's role in the offense, and successfully avoided a finding, advocated by the Government and recommended by the PSR, that Gonzalez warranted an upward adjustment for playing a managerial role in the conspiracy.  The Court specifically noted at sentencing the "vigorous and effective advocacy" by which defense counsel "has given me a great deal to think about and has somewhat changed my view of the case, which doesn't happen all that often."  (5/5/05 Tr. 2.)  Far from being ineffective for failing to make the useless arguments Gonzalez now contends should have been urged, defense counsel made the appropriate tactical choice not to contest the uncontestable, but to focus his energies on sentencing benefits that could be, and were, achieved.

In short, the sentence in this case was not based on unforeseeable quantities of drugs moved by unknown co-conspirators, or on puffery regarding quantities that Gonzalez could not have obtained.  Gonzalez admitted at his guilty plea that he had specifically agreed to obtain the statutory quantities of heroin and cocaine on behalf of his brother, and the Government presented powerful evidence that he was willing and able to obtain and provide such amounts.  Gonzalez offers nothing to suggest that he could have produced, or had provided to his attorney, any evidence with which to contest the Government's proof.  Defense counsel vigorously and effectively concentrated his advocacy on more persuasive arguments, and cannot be faulted for failing to argue the points now futilely raised by Gonzalez.  The records before the Court thus

conclusively reveal that Gonzalez's claims of ineffective assistance of counsel at sentencing are without merit.

## CONCLUSION

Accordingly, Gonzalez's petition under 28 U.S.C. § 2255 is denied. As he has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will be denied. However, should Gonzalez seek a certificate of appealability from the Court of Appeals, he may pursue such relief in forma pauperis.

SO ORDERED.

Dated: New York, New York
      July 6, 2007

_____
GERARD E. LYNCH
United States District Judge